Argued September 13, affirmed October 19, 1966

HAZEN ET AL *v.* HERBST ET AL
419 P. 2d 23

*John C. Anicker, Jr.,* Oregon City, argued the cause for appellants. On the briefs were Jack, Goodwin & Anicker, Oregon City.

*Dwight L. Schwab,* Portland, argued the cause for respondents. With him on the brief were Latourette, Latourette & Dickinson, Portland.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and REDDING, Justices.

O'CONNELL, J.

This is a suit to quiet title to approximately thirty-five acres of land which plaintiffs claim was added to their upland by accretion and reliction. Defendants appeal from a decree for plaintiffs.

■ Plaintiffs are the owners of land which, when purchased, was situated on the south bank of the Clackamas river. Defendants are the adjacent landowners on the north side of the river. Plaintiffs contend that the land in dispute was added to the north edge of their upland as the Clackamas river moved gradually to the north. There is evidence supporting this contention. The evidence establishes that as the river moved to the north it occasionally washed away large areas of land on its northern bank, but these sporadic incursions constituted a rather minor part of the erosion in the course of an otherwise gradual movement of the river over a long period of time. Such changes do not preclude the application of the doctrine of accretion.[1]

■ In the course of its movement the river cut three channels through the upland forming two small islands between the new channels. Defendants argue that the land between the channels was not eroded and that it became attached to plaintiffs' upland only because the

---

[1] Nebraska v. Iowa, 143 US 359, 12 S Ct 396, 36 L Ed 186 (1892).

channel nearest the upland on plaintiffs' side became dry as the waters of the river became concentrated in a more remote channel to the north. The evidence establishes, however, that the land which constituted the "islands" in the area now in dispute was eroded and replaced by alluvium as the river sought its new channel to the north. Defendants take the position that the new channels were formed as a result of the violent erosive action of the river and that if there was any accretive action, it consisted of filling the old channels and not a gradual movement of the river with a consequent erosion on one side and deposit of alluvium on the other. We interpret the evidence differently.

Henry Christiansen, defendants' witness, testified that in 1909 the river ran in one channel adjacent to plaintiffs' upland; that the river formed another channel along the course of a slough adjacent to the north bank and then flowed in two channels for a while; that "then finally it all got back into the north side." Christiansen testified that the river "kept working to the north"; that it "kept eating off towards the Clackamas Slough" which ran along the north bank. His description of the change in the topography indicates an erosive and accretive process:[2]

"Q Now, when the river changed from the south to the north did it change from the south channel to the north channel or how did the change take place?

"A Well, they worked to the north, or it wouldn't have cut out the fields there for them. I don't know why it should, but it does.

---

[2] The changes in the course of the river described by plaintiff Latourette similarly indicate a slow process of erosion and accretion.

"Q When it went it took out fields with it; is that what it did?

"A Yes.

"Q Was the area farmed then?

"A A lot of it.

"Q Between what was the slough and the south channel?

"A Yes. I thrashed beans with a flail on about five acres there. There is nothing but gravel bar now.

"Q Now, during this ten-year period did it go as one channel and then another channel, and then another channel from one channel to another. Is that how it worked, or how did it work?

"A Well, after he started crowding north he kept working. Every high water we get he was moving over further.

"Q During the high water?

"A Yes."

On cross-examination he testified as follows:

"Q Mr. Christiansen, over this period of time the changes that were—the river has changed rather slowly over a long period of time, hasn't it?

"A Yes.

"Q And it's been a gradual change, has it not?

"A A gradual change to the north.

"Q And that's taken place over a long period of time?

"A A long period. It was working before we come there; and we was there in 1909 and it's still working to the north.

"Q Very gradually?

"A Once in a while it got in a hurry.

"Q But, by and large, the change has been gradual?

"A My God, it took thirty-five head of cattle right out from under a man's fingers up there. He

couldn't save them, by God, so it must have been in a hurry."

■ The last answer apparently refers to the erosion of the north bank after the river had adopted the north channel as its main course. It must be conceded that Christiansen's description of the movement of the river is not always clear,[9] but it, along with the testimony of others, and recent photographs of the disputed area convinces us that the land in question was added to plaintiffs' upland by the usual processes of accretion and reliction.

Since our conclusion is based upon a de novo appraisal of the evidence, it is not necessary to consider defendants' assertion that the trial judge misconstrued the law of accretion in reaching his conclusion.

The decree of the trial court is affirmed.

---

[9] For example, on redirect, he testified:

"Q  Mr. Christiansen, that year you told us about it changed from the south side of the slough, was that all at one time or was that over a period?
"A  Yeah, that's at one time.

"Q  I see.
"A  That it broke through there.

"Q  I see.
"A  Of course, it skimmed the dirt off quite a bit from the river to the slough, and then he took her all in one grab.

"Q  How much did it take at that time of the land?
"A  Oh, three, four acres."

The statement that the river "skimmed the dirt off quite a bit from the river to the slough, and then he took her all in one grab" is consistent with Christiansen's previous testimony indicating a gradual change until the river reached the north bank, at which time it took a large area of land "all in one grab."